Marian JONES, etc., et al., Appellants
(81–1071), Respondents (81–1121),

v.

James W. FLEISCHHACKER, Respon-
dent (81–1071), Appellant (81–1121),

Ronald J. Fleischhacker, Respondent.

Nos. 81–1071, 81–1121.

Supreme Court of Minnesota.

Oct. 29, 1982.

Rehearing Denied Dec. 7, 1982.

Peterson, Gray, Sheahan & Healey and Michael J. Healey, St. Paul, for Jones.

Jardine Logan & O'Brien, Donald M. Jardine and Charles E. Gillin, St. Paul, for James W. Fleischhacker.

Lommen, Nelson, Sullivan & Cole, Mark Sullivan and Brad Eggen, Minneapolis, for Ronald J. Fleischhacker.

KELLEY, Justice.

Following a jury verdict in a personal injury action arising out of an automobile accident, appellants appeal from an order of the Ramsey County District Court denying their motion for judgment notwithstanding the verdict or for a new trial and from the judgment entered on the jury verdict. We are called upon to determine whether a minor child, initially given permission by his parent to drive a motor vehicle owned by the parent, but who violated the parent's express instructions, is deemed to be the

agent of the parent pursuant to Minn.Stat. § 170.54 (1980) so as to impute the minor's negligence in the operation of the vehicle to the parent. We are also asked to consider the propriety of insurance company retained defense counsel representing both the parent and child in actions against them arising out of the accident; whether it was error for the court to admit evidence a driver did not have a valid driver's license on the issue of the plaintiff's contributory negligence; whether the trial court erred in admitting testimony of an employment services supervisor from the Minnesota Department of Economic Security with respect to appellant Paul Jones' potential for post high school academic success; whether damages awarded were inadequate as a matter of law; and whether the trial court erred in refusing to instruct the jury on portions of the traffic code. We hold that a minor who has initial permission from his parent to drive a motor vehicle under section 170.54 is deemed to be the agent of the parent notwithstanding the minor disobeyed the parent's instructions. We hold the other issues raised are without substantial merit so as to justify a new trial. We affirm in part and reverse in part.

1. On the afternoon of September 12, 1978, Ronald Fleischhacker was at his home where he lived with his parents, three brothers and his grandmother. Ronald's father, James Fleischhacker, called the home to get someone to move a 1976 GMC Suburban van from the garage and into the street in front of the home, and to move a 1973 International Travel-All from the street to the garage where he intended to work on it after returning home from his employment. To accomplish this transfer, each vehicle would be required to move between 45 and 60 feet. Ronald, who had no driver's license but only a driver's permit, offered to move the vehicles for his father. James Fleischhacker gave Ronald permission to move the two vehicles saying, "I want the GMC taken out of the garage and placed in front of the house and the Travel-All put in the garage. And that's it." "Okay. Do it, and that's it." Previously, Ronald had been expressly forbidden by a "family rule" to drive the vehicles by himself.

Instead of following his father's instructions, Ronald took the Suburban van from the garage, drove 3 blocks to the home of a friend, Paul Tischler, and the two drove a mile to the Jones' home to pick up Paul Jones. The three then searched for Mark Wojcik, whom they ultimately found. The four, with Ronald driving, drove to Orchard Playground, south of Lake Como. After a short stay there, Ronald drove around Lake Como onto Wheelock Parkway. At all times it was raining heavily, making the brick surface of Wheelock Parkway unusually slippery. Just before reaching the intersection of St. Albans with Wheelock Parkway, Ronald, while going in excess of the posted speed limit, attempted to pass another vehicle. When doing so, the van began to slide on the wet pavement, and Ronald lost control of his vehicle resulting in its going into a spin and hitting a tree near the intersection. Paul Jones received serious personal injuries in the accident.

The appellants commenced this action to recover damages against both James Fleischhacker and Ronald Fleischhacker. They claimed James Fleischhacker was negligent in entrusting the vehicle to Ronald, that Ronald negligently operated the vehicle causing the accident and the resulting injuries to Paul Jones, and that James Fleischhacker was vicariously liable for Ronald's negligence by virtue of section 170.54.[1] The case was submitted to the jury by special verdict. The jury found that Ronald was 68% causally negligent, that Paul Jones was 22% causally negligent, and that Ronald's father, James Fleischhacker, was 10% causally negligent for permitting Ronald to have possession of the keys to the vehicle.

---

1. Minn.Stat. § 170.54 (1980) provides as follows:

Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

The jury found, however, following an instruction by the court substantially the same as 4 Minn.Dist. Judges Ass'n, Minnesota Practice, JIG II, 305 S (2d ed. 1974),[2] that at the time of the accident Ronald was not driving the van with the express or implied consent of his father. Damages awarded were $120,000; and, after deducting no-fault benefits and the application of comparative negligence, judgment was ordered for the plaintiff Paul Jones and against Ronald in the amount of $90,-496.90.[3]

■ Appellants contended in the trial court, and argue here, that their motion for a directed verdict on the issue of consent and permission of Ronald Fleischhacker to drive should have been granted; that the trial court's instruction on that issue was erroneously given; and that, as a matter of law, Ronald had permission and consent of his father to drive the vehicle and, therefore, the percentage of negligence attributed to Ronald by the jury should have been imputed to James Fleischhacker in a joint and several judgment.

Under section 170.54, operation of a motor vehicle with the owner's consent, express or implied, makes the operator the agent of the owner in case of accident. The statute changed the common law by making owners of motor vehicles liable to those injured by the operation on public highways where formerly liability would not exist. *Hutchings v. Bourdages,* 291 Minn. 211, 214, 189 N.W.2d 706, 709 (1971). We have held that public policy dictates that the statute be accorded the construction that will achieve the purpose of giving to persons injured by the negligent operation of automobiles an approximate certainty of an effective recovery by making the registered owner responsible as well as the possibly or probably irresponsible person whom the owner permits to drive the vehicle. *Id.* at 214, 189 N.W.2d at 709. We have, to that end, given the statute a liberal construction, particularly in situations involving minor permittees and sub-permittees. *State Farm Mutual Automobile Insurance Co. v. Dellwo,* 300 Minn. 409, 412, 220 N.W.2d 367, 369–70 (1974); *Lange v. Potter,* 270 Minn. 173, 178, 132 N.W.2d 734, 737 (1965). In

> An owner may consent to the use of his vehicle by another, but at the same time, by direct statement or by implication, limit such use to a particular person, time, place or purpose.
>
> In order to find that James Fleischhacker expressly or impliedly consented to the use of his vehicle at the time of the accident, you must find that such express or implied consent, if any, as was given by James Fleischhacker existed at the time of the accident and extended to the place of the accident.
>
> For the purpose of answering the question as to consent that will be submitted to you, if you find that there was consent to the operation of the vehicle at the time of the accident, it makes no difference whether such consent was express or implied.

2. The actual instruction given is as follows:

> In this case James Fleischhacker denies that the vehicle was being driven with his consent at the time of the accident of September 12, 1978.
>
> Determination of consent requires consideration of all of the surrounding facts and circumstances, taking into consideration, among other things, the discussions, if any, relating to the use of the vehicle, including any instructions, limitations or restrictions placed upon such use; the purpose for which the vehicle was being used; the relationship existing between the owner and the driver; the fact of previous or accustomed use by the driver; and the failure of the owner to object to a known past use or intended future use under circumstances where the use should have been foreseen.
>
> An owner may consent to the use of his vehicle by another either expressly or impliedly. An express consent is a consent expressed in words. An implied consent may be found from all of the surrounding facts and circumstances.
>
> The operator of a vehicle may have the owner's implied consent to operate the vehicle, even though the owner did not have actual knowledge of its operation at or about the time in question.

3. The judgment was not against James Fleischhacker for that amount because he was not vicariously liable to plaintiff for Ronald's negligence as a result of the jury's finding of no consent. Judgment was not entered against him on the negligent entrustment claim because Paul Jones' negligence was found by the jury to be greater than James Fleischhacker's. Minn.Stat. § 604.01, subd. 1 (1980).

*Granley v. Crandall* 288 Minn. 310, 313, 180 N.W.2d 190, 192 (1970), we stated:

> Nevertheless, we have concluded that the policy of Minn.St. 170.54 is better served by holding as a matter of law that where a parent permits his child to use his car, he is deemed to have given consent to the operation of his vehicle by any third person driving with the child's permission * * *.

We further stated:

> To sustain the burden of proving lack of consent will require a strong showing that the car was being used by the child *without the parent's knowledge and contrary to his explicit instructions* * * *. (emphasis added)

*Id.* at 313, 180 N.W.2d at 192. Since both requirements must be met, if the initial use was with the parent's knowledge, vicarious liability of the parent follows, notwithstanding the operation by the child was contrary to the parent's express instructions. Subsequent cases have consistently broadened the liability of a parent who gave initial permission to a child to drive.[4] We have not made the liability of the parents absolute. If it can be shown that the owner took every reasonable precaution to prevent access to the vehicle by the minor, *Dellwo,* 300 Minn. at 413, 220 N.W.2d at 370, or if the vehicle was taken by the minor without the parent's knowledge or consent, *Shelby Mutual Insurance Co. v. Kleman,* 255 N.W.2d 231, 233 n. 3 (Minn. 1977), the first prong of the *Granley* test has not been met and the parent consequently is not held liable under the statute.

While there do exist cases where the issue of initial permission and consent is in dis-

pute making the issue subject to jury resolution, this is not such a case. Here, James Fleischhacker admittedly gave initial permission to Ronald to operate the van. Therefore, following the rule enunciated in *Granley* and its progeny, as a matter of law, under section 170.54 there was permission and consent, notwithstanding the efforts of Ronald's father to severely circumscribe that initial permission to the isolated act of moving the van from the garage to the street. "Parents * * * cannot with impunity blind themselves to the reality of youthful behavior" in the almost universal proclivity of young people for joyriding. *Granley,* 288 Minn. at 313, 180 N.W.2d at 192. Accordingly, appellants' motion for a directed verdict on the issue of whether Ronald was operating the van with permission of the father should have been granted,[5] and judgment entered determining that James Fleischhacker was jointly and severally liable to appellants with his son, Ronald Fleischhacker.

◼ 2. Appellants next contend that attorney Donald Jardine acted unethically in representing both James Fleischhacker, the father, and Ronald, the son, during the course of the litigation until shortly before trial. Although appellants claim they were prejudiced by Mr. Jardine's representation on the issue of damages, the main thrust of their contention is that they were prejudiced by that representation on the issue of permission and consent.[6] Shortly after appellants commenced this action, Mr. Jardine interposed an answer on behalf of James Fleischhacker in which he alleged lack of permission and consent in Ronald to drive the car at the time and place of the acci-

---

4. *Hutchings v. Bourdages,* 291 Minn. 211, 189 N.W.2d 706 (1971); *Western National Mutual Insurance Co. v. Auto-Owners Insurance Co.,* 300 Minn. 401, 220 N.W.2d 362 (1974).

5. As noted, the trial court, in essence, instructed the jury pursuant to JIG II, 305 S. That instruction is inappropriate where, as here, it is undisputed the minor initially was given consent to operate the vehicle, but exceeded the scope of permission. We also note that the issue of entrustment of a vehicle by an owner to an adult is not now before us. *See Anderson v. Hedges Motor Co.,* 282 Minn. 217, 164

N.W.2d 364 (1969); *Truman v. United Products Corp.,* 217 Minn. 155, 14 N.W.2d 120 (1944).

6. At the outset, it should be noted that the ruling of this court that, as a matter of law, permission and consent existed for Ronald to operate the van substantially eliminates any prejudice to the appellants by Mr. Jardine's dual representation on that issue. However, appellants' post-trial motion for a new trial likewise raises the issue that they were prejudiced in connection with the damage issue.

dent. Some months later, appellants threatened to enter a default judgment against Ronald unless an answer for him was interposed. Mr. Jardine then interposed an answer for Ronald which alleged that Ronald did not have permission and consent. Thereafter, depositions were taken and Mr. Jardine appeared for Ronald and James until about two weeks prior to the trial date, at which time Mr. Sullivan was substituted as counsel for Ronald. The insurer of James Fleischhacker, through separate counsel, had instituted a declaratory judgment action to determine the issue of permission and consent and had requested the court to advance that action for trial before hearing the personal injury action. This motion for advancement was successfully resisted by appellants' attorney. Although at one time appellants' attorney suggested he might start a declaratory judgment action himself, he never did so. On the morning of the trial, appellants moved to sever the issue of permission and consent and, for the first time, objected to dual representation of James Fleischhacker and Ronald by Mr. Jardine as well as seeking an order to bar Mr. Jardine and Mr. Sullivan from dual cross-examination. A motion for continuance until after the declaratory judgment action was determined was renewed by the defendants, was vigorously resisted by the appellants' attorney, and was finally denied by the court. At all times, in depositions and at trial, Ronald Fleischhacker admitted that he did not have his father's consent to drive the van on the highway except for the limited purpose of moving it from the garage to the street in front of his home. At no time did he ever complain about Mr. Jardine representing him. Neither Mr. Jardine nor Mr. Sullivan could, in good faith, assert that Ronald did have permission of his father. Minn.R. Civ.P. 11.

We conclude appellants' accusation is without merit. In the first place, appellants are without standing to raise the alleged conflict between one defendant and his former attorney. Generally, it is only the former client who can raise the issue. *In re Yarn Processing Patent Validity Liti-*

*gation,* 530 F.2d 83, 88–89 (5th Cir.1976); *National Texture Corp. v. Hymes,* 282 N.W.2d 890 (Minn.1979). That is particularly true where the plaintiff can show no prejudice. We agree with the trial court that appellants failed to show any prejudice. Appellants failed to commence a declaratory judgment action, resisted advancement of the declaratory action which had been started by Mr. Fleischhacker's insurer, did not complain about Mr. Jardine's representation until the morning of the trial, and again resisted a motion for continuance so the declaratory judgment action could be tried first. Moreover, appellants complaint that Mr. Jardine and Mr. Sullivan had opportunity of dual cross-examination on the issue of Paul Jones' negligence and his damages is without merit. James Fleischhacker was sued directly on the theory of negligent entrustment, and if found to be more negligent than plaintiff Paul Jones, would have been liable to Jones even if the consent issue had been resolved favorably to him. Thus, on the issue of plaintiff's negligence and his damages, Ronald and James Fleischhacker each were entitled to representation by counsel. Finally, charges of unethical conduct of opposing counsel for the purpose of requiring withdrawal should not be a "standard part of counsel's armament" in litigation. *Black v. State of Missouri,* 492 F.Supp. 848, 862 (W.D.Mo.1980). The Minnesota Lawyers Professional Responsibility Board is the forum normally where such charges should be initially aired. *See* Minnesota Code of Professional Responsibility EC 1–4 (1980); Minnesota Rules on Lawyers Professional Responsibility, Rule 2.

■ 3. Next, appellants claim that the issue of the negligence of Paul Jones should not have been submitted to the jury. Appellants first claim that the sole evidence of negligence on the part of Paul Jones was that he rode with Ronald Fleischhacker, knowing the latter did not have a valid driver's license, and secondly, that there was no other evidence of negligence on the part of Paul Jones. At the outset, we note there is no claim by anyone that any negli-

gence on the part of Paul Jones contributed to cause the accident. The only claim is that he acted negligently for his own safety.

■ Generally, we have held that it is irrelevant to the issue of negligence whether or not a claimant or a defendant had a valid driver's license. *Knutson v. Nielsen,* 256 Minn. 506, 518, 99 N.W.2d 215, 223 (1959); *Mahowald v. Beckrich,* 212 Minn. 78, 81, 2 N.W.2d 569, 572 (1942). Assuming, but not deciding, that admission in evidence at the trial of the fact that Ronald did not have a valid driver's license is error, nevertheless, it is clear that error in admission of evidence can be waived either by failing to make timely objection, Minn.R.Evid. 103(a)(1), or by a party introducing the evidence himself. *In re Forsythe's Estate,* 221 Minn. 303, 309–10, 22 N.W.2d 19, 24 (1946). A review of this record shows that appellants' counsel raised the issue himself in his opening statement, questioned several witnesses concerning Ronald's lack of license, failed to register objection when defense counsel questioned witnesses on the subject, commented on Ronald's lack of license in his final argument to the jury, and failed to object when defense counsel commented in final argument on that fact. By these actions, we hold appellants waived any objections they might have had to the admission of this evidence.

■■ Moreover, contrary to appellants' assertion, the fact that Paul Jones knew Ronald had only a driver's permit was not the only evidence bearing upon Paul Jones' negligence. There was evidence that the jury could have believed that Paul Jones was reluctant to get in the van because he knew Ronald was inexperienced; that he also knew that Ronald was not supposed to be driving, but only to be putting the van on the street at his home; that he was aware that the streets were wet and slippery; that on two occasions and for 1 block just prior to the accident Ronald was driving at an illegal and excessive rate of speed; and that he, Paul Jones, neither asked to be let out of the vehicle nor requested Ronald to drive more prudently, nor in any other way took any steps for his own safety. We held in *Young v. Wlazik,* 262 N.W.2d 300, 307 (Minn.1977), that a passenger has a duty not to ride with an incompetent driver. The trial judge instructed the jury in accordance with the standard of care for passengers set forth in *Young.* A jury's finding of negligence will be sustained on appeal unless there is no dispute in the evidence and the factfinder can come to but one conclusion. *Steinhaus v. Adamson,* 304 Minn. 14, 20, 228 N.W.2d 865, 869 (1975). Here, there were disputes in the evidence. Facts existed upon which the jury could have concluded, as they did, that plaintiff Paul Jones had failed to exercise due care for his own safety under the circumstances existing on September 12, 1978.

■ Finally, on this issue, appellants urge a new trial because of an alleged error in instruction. The trial court instructed the jury to consider Paul Jones' negligence in "entering" and "riding" in the vehicle. Appellants contend *Young v. Wlazik,* 262 N.W.2d 300 (Minn.1977), allows the jury to consider only events occurring after the passenger has entered the vehicle, i.e., "passenger * * * assumes a duty not to *ride* with an incompetent driver." (emphasis added) *Id.* at 307. It is difficult to envision how one could "ride" without first "entering." Technical imprecision in instructions do not require reversal if the charge was sufficient to inform the jury of the findings required in the setting of the evidence. *Eliason v. Production Credit Association,* 259 Minn. 134, 138, 106 N.W.2d 210, 213 (1960); *Knox v. City of Granite Falls,* 245 Minn. 11, 18, 72 N.W.2d 67, 72 (1955); *Anderson v. Hegna,* 212 Minn. 147, 152, 2 N.W.2d 820, 823 (1942).

■ 4. Appellants claim the trial court erred in allowing Ronald Kubes, an employment services supervisor with the Department of Economic Security, to testify "unequivocally" that Paul Jones would finish college successfully and be able to get employment with no wage loss. An examination of the transcript of Kubes testimony does not reveal he "unequivocally" stated that Jones would finish college. Kubes

merely stated that he would *encourage* Jones to *continue* his college studies.

■ Moreover, we cannot hold the trial court was clearly wrong in finding sufficient foundation for Kubes testimony. Employability, wage rates, training and the like are not within common knowledge and experience of a lay juror, and the admission of testimony on those subjects was within the discretion of the trial judge. Minn.R. Evid. 702. We said in *Teslow v. Minneapolis-Honeywell Regulator Co.,* 273 Minn. 309, 312, 141 N.W.2d 507, 509 (1966), a case decided before the adoption of the Minnesota Rules of Evidence:

> It has now become axiomatic in this state that the sufficiency of the foundation to qualify a witness as an expert is a question left almost entirely to the trial court and we will not reverse unless it is clearly apparent that the trial court was wrong.

Kubes worked for the Minnesota Department of Economic Security from 1962 to 1968 interviewing and evaluating and placing job applicants. From 1968 to 1974, he was employed under the Manpower Development and Training Act selecting people for training and referring them for training and helping with job placements. Later he worked for the St. Paul Career Guidance and Training Center. He has experience in advising individuals as to whether they should seek vocational or college training. From the foregoing, clearly the trial court did not abuse its discretion in finding sufficient foundation for Kubes' testimony. The weight to be given that testimony was for the jury to evaluate.

■ 5. Finally, appellants urge that damages awarded by the jury were inadequate as a matter of law. There is no claim that the trial court failed to give proper damage instructions. Without reviewing all the evidence on damages in detail, suffice it to say that serious disputes existed about the nature and extent of the injuries, and with respect to future damages, whether there would be any, or, if any, whether they were attributable all or in part to injuries received by Paul Jones in the September 12, 1978 accident or in a later accident.

After careful review of the record, we cannot find that the trial court clearly abused its discretion in refusing to grant a new trial or an additur. The damages awarded were within the parameters of the evidence submitted by the parties. *Ramfjord v. Sullivan,* 301 Minn. 238, 245, 222 N.W.2d 541, 546 (1974); *Tuominen v. Waldholm,* 301 Minn. 492, 493, 221 N.W.2d 709, 710 (1974).[7]

■ 6. Respondent James Fleischhacker, by notice of review, asked that the finding of the trial court based on an answer in the special verdict that he was 10% negligent in entrusting the van to Ronald be set aside. Where the negligence of the operator is reasonably foreseeable, the owner has the duty to take steps to prevent such operation. *Illinois Farmers Insurance Co. v. Tapemark Co.,* 273 N.W.2d 630, 635–36 (Minn.1978). *See also* Restatement (Second) of Torts § 390 (1965); *Hardwick v. Bublitz,* 254 Iowa 1253, 1266, 119 N.W.2d 886, 893 (1963). While the evidence on this issue is not plentiful, there was evidence from which the jury could have concluded that Ronald was very anxious to drive the van on the open road and had repeatedly requested his father to do so in the past. From this, the jury could have made a reasonable inference that Ronald's "joyride" was foreseeable once his father had extended initial limited permission to use the car. By considering that knowledge that James Fleischhacker actually had, or that a reasonable person in his position should have had, the jury could have concluded that James Fleischhacker failed to use due care in granting initial permission

7. Appellants also allege the trial court erroneously failed to instruct the jury on Minn.Stat. § 169.18, subd. 5 (1980) and Minn.Stat. § 169.-19, subd. 4 (1980). Without deciding if it was error to refuse to instruct on those statutes, clearly the error, if any, was not prejudicial to the appellants since the jury did, in fact, find that Ronald Fleischhacker was negligent without the instructions.

to Ronald to drive, and that his failure to do so was cause of the happening of the accident and resulting injuries to Paul Jones.

We reverse and remand to the district court for entry of judgment in favor of plaintiff against the defendants Ronald Fleischhacker and James Fleischhacker, jointly and severally, in the amount of $90,496.90. In all other respects, the judgment entered October 6, 1981 and the order denying posttrial motions of both the appellants and respondents are affirmed.