# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1553

_____

| | | |
|---|---|---|
| Delvin E. Gylten; Doris E. Gylten, | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Timothy Jon Swalboski, Sr., | * | District of Minnesota. |
| individually, and as a parent of | * | |
| Timothy Jon Swalboski, Jr., a minor; | * | |
| Timothy Jon Swalboski, Jr., | * | |
| individually, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Climax Independent School | * | |
| District No. 592; Fisher Independent | * | |
| School District No. 600, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: October 12, 2000
Filed: April 24, 2001

_____

Before BYE, BRIGHT, and MAGILL, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Delvin and Doris Gylten appeal from the district court's[1] summary judgment of dismissal of their actions against Fisher Independent School District ("Fisher") and Climax Independent School District ("Climax"), on the Gyltens' claims of negligence in this diversity action. We affirm.

I.    Background

Fisher and Climax cosponsor one high school football team pursuant to a cooperative agreement drafted in 1984. The team alternates practice locations between the two schools located about fifteen miles apart in northwestern Minnesota. The agreement states that "[t]he control and supervision of student participants while in transport to and from each school district shall be the responsibility of the home school district." (J.A. at 58.) Under the agreement, each school is expected to provide a bus to transport its student athletes when practices are held at the other school.

On September 12, 1996, during the school day, school administrators realized there was some confusion over the location of that day's football team practice. Both schools' schedules listed the practice as taking place at their own school. When the confusion arose, Climax had a bus at its school but no licensed driver was available to operate it, and Fisher had a licensed driver (the football team coach) but no bus was available at its school. Ultimately, the schools agreed that practice should be held at Fisher that day with the Climax student athletes providing their own transportation to Fisher. The parties dispute issues relating to the person(s) making the final decision on where to hold the practice.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Once the decision had been made, Timothy Swalboski, Jr., a high school junior at Climax and member of the football team, drove himself and fellow teammate, Matthew Davidson, to practice at Fisher. On his way to practice, Swalboski, Jr. failed to yield the right-of-way at an intersection and collided with a vehicle driven by Delvin Gylten. Swalboski, Jr., Davidson, and Delvin Gylten sustained injuries in the accident, the latter suffering severe heart, head, and elbow injuries. In the ensuing litigation, Doris Gylten made a claim for loss of consortium.

The Gyltens sued Climax, Fisher, and Swalboski, Jr.'s parents, alleging they were liable for Swalboski, Jr.'s negligence. The Gyltens settled their claims with Swalboski, Jr.'s parents. In their claims against Fisher and Climax, the Gyltens contend that Swalboski, Jr.'s negligence is imputed to the school districts because of their supervisory relationship. The Gyltens allege that Climax and Fisher negligently breached their duty of supervision and control of the students while in transport to football practice.

The defendants brought motions for summary judgment arguing that they owed no legal duty to non-students who might be injured due to the negligence of a student driving to a school-sponsored activity. Additionally, the defendants argued immunity from suit under Minn. Stat. § 466.03(6) (immunity for discretionary acts). The district court granted summary judgment to Fisher and Climax on both grounds. The Gyltens appeal.

II.    Discussion

We review a grant of summary judgment de novo, applying the same standard as did the district court: whether the record, viewed in a light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 891 (8th Cir. 2000). Summary judgment is proper

if the plaintiff fails to establish any element of his or her prima facie case. Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998).

Because this is a diversity action, state law governs issues of substantive law. Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938, 944 (8th Cir. 2001). In Minnesota, to prevail on a claim for negligence, a plaintiff must prove the following: (1) that the defendant has a legal duty to the plaintiff to take some action; (2) that there was a breach of that duty; (3) that the breach of that duty was the proximate cause of the harm to the plaintiff; and (4) damage. Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999).

A.    Duty

We turn to the question of whether the Gyltens presented sufficient evidence of the existence of a duty on the part of the school districts toward Delvin Gylten. Appellees argue that they had no duty to protect Mr. Gylten, a non-student, from harm caused by the conduct of Swalboski, Jr., the student driver. In Minnesota, the existence of a legal duty to act depends on two factors: (1) the relationship of the parties, and (2) the foreseeability of the risk involved. See Erickson v. Curtis Inv. Co., 447 N.W.2d 165, 168-69 (Minn. 1989). "[Special] relationships can give rise to an affirmative duty to take precautions to protect others from harm, as well as to rescue them." FOWLER V. HARPER, FLEMING JAMES, JR., & OSCAR S. GRAY, THE LAW OF TORTS § 18.6, at 724 n.25 (2d ed. 1986). In addition, "[a]n affirmative obligation to use care to control the conduct of others may . . . be raised by a special relationship between the actor and the person injured." Id. at § 18.7, at 741. "In order to find that a special relationship exists, it must be assumed that the harm to be prevented by the defendant is one that '[the defendant] is in a position to protect against and should be expected to protect against.'" Gilbertson, 599 N.W.2d at 131 (quoting Erickson, 447 N.W.2d at 168).

(1)  Claims as to Fisher

Under the cooperative agreement between the two school districts, Fisher did not assume a responsibility to supervise or transport Climax students to football practice. The agreement provided that the "control and supervision of student participants while in transport to and from each school district shall be the responsibility of the home school district."  (J.A. at 58.)  Swalboski, Jr. was a Climax student and, pursuant to the agreement, Climax was responsible for his transportation and not Fisher.  Therefore, we conclude that under the agreement, Swalboski, Jr. and Fisher did not have any student-school relationship.  Thus, Swalboski, Jr.'s conduct could not be attributed to Fisher.  No duty existed under the agreement which required Fisher to supervise Climax students.  Thus, the district court properly dismissed Fisher from the action brought by the plaintiffs.

(2)  Claims as to Climax

The more difficult question is whether Climax owed a duty to the Gyltens.  If no duty exists, then we need not reach the issue of whether Climax can claim the protection of discretionary immunity in allowing student athletes to drive themselves to practices.

The Gyltens contend that Climax is liable for their injuries as a result of negligent supervision of Swalboski, Jr. during his drive to Fisher and for negligent failure to obtain parental consent authorizing students to drive to Fisher for practice.  The Gyltens claim that the student-school relationship creates a duty of supervision and responsibility for all foreseeable harm caused by a student to any party.  Where the state's highest court has not ruled, we follow the decisions of the state's intermediate courts when they are the best evidence of what the state law is.  See Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 883 (8th Cir. 2000).  The Gyltens have cited no Minnesota case that recognizes the liability of a school district for injuries to

a non-student plaintiff injured by students off school premises, and our research uncovers no such case in the Minnesota appellate courts.

The Gyltens cite to a Minnesota case bearing on possible liability of a school district for failure to properly supervise the extracurricular activity where an injury was sustained by a student in an accident involving a motor vehicle operated by a student during an extracurricular activity of the school where misbehavior by unsupervised students is to be expected. See Verhel v. Independent Sch. Dist. No. 709, 359 N.W.2d 579 (Minn. 1984) (5-4 decision) (Simonett, J., dissenting). In Verhel, the court affirmed a judgment against a school district in a negligence action by a high school cheerleader and her father to recover for injuries suffered by the cheerleader in an automobile collision that occurred when the cheerleading team, traveling in a van operated by another cheerleader, was bannering homes of football players early in the morning one day prior to the start of the season. Id. at 590. The Gyltens cite to dicta in Verhel, id. (driving misbehavior by unsupervised students is to be expected and is precisely the harm to be guarded against by the exercise of the school district's supervision). We cannot say that the Verhel dicta amounts to a statement of clearly established law. Moreover, that case hinged on the duty to supervise its students and that the school district, through its agent–a faculty cheerleading sponsor, was aware of the risk of harm to its students. Id. at 589-90.

The duty of a school to supervise its students has been defined as an obligation to:

> use ordinary care and to protect its students from injury resulting from the conduct of other students under circumstances where such conduct would reasonably have been foreseen and could have been prevented by the use of ordinary care. There is no requirement of constant supervision of all the movements of pupils at all times.

Sheehan v. St. Peter's Catholic Sch., 188 N.W.2d 868, 870 (Minn. 1971) (cited with approval in, Raleigh v. Independent Sch. Dist. No. 625, 275 N.W.2d 572, 574-75 (Minn. 1978)).

The relationship between a school district and its students creates the duty. Spanel v. Mounds View Sch. Dist. No. 621, 118 N.W.2d 795, 802 (Minn. 1962) ("School children have a special status in the eyes of the law, and in view of the compulsory attendance statute deserve more than ordinary protection.") (footnote omitted). A school is negligent if it fails to exercise ordinary or reasonable care towards its students. Hernandez v. Renville Pub. Sch. Dist. No. 654, 542 N.W.2d 671, 674 (Minn. Ct. App. 1996). The evidence must show that "supervision would probably have prevented the accident." Verhel, 359 N.W.2d at 586. However, "[a] teacher, generally, is not required to anticipate the hundreds of unexpected student acts which occur daily or to guard against dangers inherent in rash student acts." Id.

Here, as the district court noted, Climax does not owe a duty to the Gyltens because it does not have a special relationship with Mr. Gylten, a non-student, third-party plaintiff. This view of no duty is supported by other state courts which have addressed the issue, for example, the Indiana Court of Appeals. In Wickey v. Sparks, 642 N.E.2d 262 (Ind. Ct. App. 1994), a member of the general public who suffered injuries in a collision with an automobile operated by a student commuting between a public school and its vocational center brought a negligence action against the public school corporation and a vocational center organized by several school corporations. Characterizing the question as whether the duty to supervise, owed by a school to its students, extended to third parties, the Wickey court balanced three competing factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the injured party; and (3) public policy concerns. Wickey, 642 N.E.2d at 266 (quoting Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991)). The court determined that all three factors weighed against imposing a duty on the school district to protect third parties. Id. at 268.

The district court in this case relied on <u>Wickey</u> and cases from two other jurisdictions, <u>Hoff v. Vacaville Unified Sch. Dist.</u>, 968 P.2d 522 (Cal. 1998), and <u>Thompson v. Ange</u>, 443 N.Y.S.2d 918 (App. Div. 1981).  In <u>Hoff</u>, a student leaving school at the end of the day lost control of his car, jumped a curb and hit an individual who was walking on the sidewalk across the street.  <u>Hoff</u>, 968 P.2d at 522.  The court held that school personnel who neither know nor reasonably should know that a particular student has a tendency to drive recklessly owe no duty to off-campus non-students.  <u>Id.</u> at 529.  In <u>Thompson</u>, the plaintiffs were injured in a multi-car accident caused by a student driving between high school and vocational school.  <u>Thompson</u>, 443 N.Y.S.2d at 920.  The court held that neither school had a duty to members of the public to keep their students off the public highways during school hours.  <u>Id.</u> at 921.

The Gyltens rely on <u>Hamilton v. Independent Sch. Dist. No. 114</u>, 355 N.W.2d 182 (Minn. Ct. App. 1984), to argue that schools owe a duty to non-student third parties.  In <u>Hamilton</u>, after a school-sponsored basketball game, a student waiting outside the school gym pushed a fellow student who fell into the plaintiff, injuring her. <u>Id.</u> at 183.  As the <u>Hamilton</u> decision makes clear, however, the school knew the students had been involved in prior altercations.  <u>Id.</u> at 184.  The Minnesota Court of Appeals, reversing a summary judgment of dismissal, determined that the school may have owed the plaintiff, a spectator at a school sporting event, a duty because the school knew there was a foreseeable risk of injury and a jury could have found the presence of a school supervisor might have prevented the injury.  <u>Id.</u> at 185.[2]  Similarly, in <u>Verhel</u>, the Minnesota Supreme Court determined that the driving behavior, or misbehavior, of a cheerleader carrying thirteen passengers in her parents' van before dawn was foreseeable.  <u>Verhel</u>, 359 N.W.2d at 589-90 (noting that evidence was introduced that the student driver had been "driving kind of fast," that she had driven

_____

[2]The opinion in <u>Hamilton</u> is unclear as to whether the injured plaintiff was a student herself at the time.

over the curb shortly before the accident, and was feeling tired at the time of the accident).

We agree with the district court's conclusion that the Gyltens did not produce sufficient evidence to give rise to a legal duty of care owed by Climax or Fisher to the Gyltens. As the court noted, the Gyltens are members of the general public with no relationship to either school district. In addition, the Gyltens produced no evidence that either school district knew or should have known that Swalboski, Jr. was anything but an average licensed driver who had been granted parental permission to drive his car to school. No evidence indicated that Swalboski, Jr. prior to the accident drove in an unsafe manner or, if he was a careless driver, that Climax received any notice of those driving characteristics. This case differs from those where liability of a school district derived from the school district providing a defective motor vehicle to students or permitting students' use of a defective motor vehicle. See, e.g., Hanson v. Reedley Joint Union High Sch. Dist., 111 P.2d 415 (Cal. Dist. Ct. App. 1941) (affirming judgment for injured students' parents after an automobile accident and holding that the school district was responsible for the negligence of the school's tennis teacher in requesting that a tennis team member drive the two students home after practice, when the teacher knew that the team member's vehicle was defective). In the absence of contrary precedent in the Minnesota courts, we believe that the Minnesota Supreme Court would likely reach the conclusion of not extending a school district's liability to non-student third parties who lack any connection to the school. Although we proceed with caution on summary judgment motions in a negligence action, Hughes v. American Jawa, Ltd., 529 F.2d 21, 23 (8th Cir. 1976), we conclude that the grant of summary judgment was proper. Absent a duty, there can be no breach, and thus, no basis for recovery under a negligence theory.

B.    Immunity

The district court, on an alternative basis, noted that even if appellants were able to support a prima facie case of negligence, the discretionary function immunity under Minn. Stat. § 466.03(6) protected the school districts from liability.  Minnesota's discretionary function immunity protects municipalities from tort liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."  Minn. Stat. § 466.03(6).

We need not and do not address the immunity issue in light of our disposition adverse to the Gyltens on the negligence issue.  We neither approve nor disapprove of the district court's ruling on immunity.

III.    Conclusion

Accordingly, the summary judgment of dismissal against each school district is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-