**JeanAnn FENRICH, individually, and as trustee for the heirs of Gary Fenrich, Appellant,**

v.

**The BLAKE SCHOOL, et al., Respondents.**

A17-0063

Court of Appeals of Minnesota.

Filed September 5, 2017

· Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota; and Ryan B. Magnus, Mankato, Minnesota; and Jennifer L. Thon, Jones Law Office, Mankato, Minnesota (for appellant).

Nicole R. Weinand, Law Offices of Thomas P. Stilp, Golden Valley, Minnesota (for respondent).

Considered and decided by Reilly, Presiding Judge; Johnson, Judge; and Larkin, Judge.

## OPINION

### JOHNSON, Judge

A high-school student caused an automobile accident while driving himself and other students to an extra-curricular activity in his family's vehicle. The driver of the other vehicle was killed, and a passenger of the other vehicle was injured. The issue in this appeal is whether the student's school may be held liable to the persons in the other vehicle on the ground that the school was negligent. The district court answered that question in the negative, reasoning that a school does not owe a duty of reasonable care to the general public to protect against the tortious conduct of its students. We conclude that, in the circumstances of this case, the school is entitled to summary judgment because the automobile accident was not foreseeable. Therefore, we affirm.

## FACTS

The Blake School is a private school in the Twin Cities, with a high school in Minneapolis. In 2011, the high school sponsored a cross-country running team that participated in inter-scholastic meets governed by the Minnesota State High School League (MSHSL). The high school employed a head coach and a part-time assistant coach for the cross-country team.

One week after the end of the MSHSL cross-country season, Nike Inc. hosted the Nike Cross Nationals Heartland Regional cross-country meet in Sioux Falls, South Dakota. Several weeks before the Nike meet, the head coach sent an e-mail message to all team members and their parents, stating that "all varsity and top JV runners are encouraged to participate" in the Nike meet. Because the Nike meet was to occur after the MSHSL season, the school's coaches determined that team members could not participate in the Nike meet on behalf of the school and, thus, that the school could not provide uniforms, transportation, or other resources. The assistant coach informed team members that they would be responsible for their own transportation and lodging. This information also was posted on the team's website. The school's coaches also determined that they could not conduct practices after the MSHSL season. A former team member, who had graduated from the school one and one-half years earlier and sometimes assisted on a volunteer basis, was available to lead "captains' practices" during the week between the end of the MSHSL season and the Nike meet.

During that week, the assistant coach stopped by one of the captains' practices to talk to team members to "make sure that they talked to their parents about the lodging and transportation." Some team members said that they would like to ride to the Nike meet in the assistant coach's

vehicle. Three days before the Nike meet, the mother of T.M., a member of the team, sent an e-mail message to the head coach and the assistant coach concerning T.M.'s transportation to the Nike meet:

> [T.M.], his dad and I just finished a conversation about transportation for the race this weekend. It sounds like [T.M.] (and the boys) would like to have a caravan down and back with you. We are very comfortable with [T.M.]'s driving skills and he's legal now to have passengers, and we are fine with him taking our car. Given the long distance though, we would like to know that he is following you, and won't be venturing to Sioux Falls and back without an adult at least in rear view mirrors. All we would need is you to confirm that is the plan, and perhaps your cell phone, so that we have a way to reach an adult if need be. I'm not able to go this weekend. Please know that [T.M.'s father] is willing to drive as well, if you would prefer that, but we understand also that "Coach plus kids" sounds like a more fun venture for [T.M.] and the boy team runners. That's what we are hearing tonight anyway.... Please call if you want to discuss.... Let me know.

The assistant coach responded by writing, "That works, we will drive in a caravan at a safe speed!"

On the morning of Saturday, November 12, 2011, some team members met at the assistant coach's home in Chanhassen to begin the journey to Sioux Falls. The assistant coach drove his personal vehicle, in which his son, who was a member of the team, and other team members were passengers. T.M. drove his family's vehicle, in which two team members and the volunteer coach were passengers. The assistant coach suggested that the volunteer coach ride with T.M. so that the volunteer coach would not need to incur the expense of transporting himself to the meet.

Later that day, while driving on state highway 15 through Watonwan County, T.M. lost control of his vehicle, crossed over the center line, and collided with a vehicle in which JeanAnn Fenrich and her husband, Gary Fenrich, were traveling in the opposite direction. JeanAnn was injured, and Gary was killed. When a law-enforcement officer conducted interviews later that day, the volunteer coach identified himself as "an assistant coach with the Blake Cross-Country Team." The volunteer coach told the investigator that, shortly before the collision, the team members in the vehicle were using their cellular telephones or similar devices to play music and that T.M. might have "lost focus on what was ahead of him."

In November 2014, JeanAnn Fenrich commenced this action. The complaint named the school, the head coach, the assistant coach, and the volunteer coach as defendants. Fenrich alleges that the defendants were negligent "by having [T.M.] drive himself [and others] to the Nike meet" and "by failing to provide adequate supervision while [T.M.] drove himself [and others] to the Nike meet." She alleges that the school is liable for its own negligence and is vicariously liable for the negligence of its agents. She seeks damages for her husband's death and for her own injuries. The complaint acknowledges that Fenrich previously entered into a settlement agreement with T.M.

The district court resolved Fenrich's claims at various stages of pre-trial proceedings. In May 2015, the district court granted a motion to dismiss the claims against the head coach and the assistant coach on the ground that those two defendants were not properly served within the applicable limitations period. In August 2016, the district court ruled on a motion

for summary judgment brought by the school and the volunteer coach. The district court essentially granted the motion in part by stating that the school does not have a duty "to protect third-party non-students from injury caused by the conduct of its students who are driving to a school-sponsored activity" but merely a duty "to protect *its students* from injury resulting from conduct of *other students*." But the district court denied the motion in part with respect to the vicarious-liability claim on the ground that Fenrich presented sufficient evidence to allow a reasonable juror to find that T.M. "was acting as an agent of the school" or of the volunteer coach.

In October 2016, after a pre-trial conference, the district court issued an order clarifying that it had resolved Fenrich's negligence claims against the school and the volunteer coach. The order stated that Fenrich was permitted to go to trial on her vicarious-liability claim. The school and the volunteer coach then requested reconsideration of the district court's May 2015 order, which had, among other things, denied a motion to dismiss Fenrich's vicarious-liability claim. The district court agreed to reconsider and asked the parties to submit memoranda. In November 2016, the district court issued another order, which, first, stated that there were no pending claims against the volunteer coach and, second, dismissed Fenrich's vicarious-liability claim on the ground that, in her settlement with T.M., she had released all claims against T.M. and his "principals." Because all claims had been resolved, the court administrator entered final judgment.

Fenrich appeals. She challenges only the district court's decision to grant the school's motion for summary judgment on Fenrich's claim that the school was negligent, which is reflected in the district court's August 2016 and October 2016 orders.

## ISSUE

Did the school assume a duty of reasonable care to Fenrich by agreeing that one of its students would drive himself and other students to an out-of-town, extracurricular activity in his family's vehicle?

## ANALYSIS

██ Fenrich argues that the district court erred by granting the school's motion for summary judgment on her negligence claim. A district court must grant a motion for summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment and views the evidence in the light most favorable to the party against whom summary judgment was granted. *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015).

### A.

██ We begin with general principles of law. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (citing *Flom v. Flom*, 291 N.W.2d 914, 916 (Minn. 1980)). To establish a defendant's liability on a negligence

claim, "a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.* (citing *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995)). The first element of a negligence claim—the existence of a duty of care—"is a threshold question." *Id.* In reviewing a district court's ruling as to whether a duty of care exists, we apply a *de novo* standard of review. *Id.*

▮ In general, "a person does not owe a duty of care to another—*e.g.*, to aid, protect, or warn that person—if the harm is caused by a third party's conduct." *Id.* at 177-78 (citing *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn. 1979)). But the general rule is subject to two exceptions. The first exception is the situation in which "there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable." *Id.* at 178 (citing *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011)). The second exception is the situation in which "'the defendant's *own conduct* creates a *foreseeable risk* of injury to a *foreseeable plaintiff.*'" *Id.* (quoting *Domagala*, 805 N.W.2d at 23).

**B.**

We next consider whether this case is within one of the two exceptions to the general rule that a person does not owe a duty of care to protect another person from harm caused by a third party.

The parties agree that this case is not within the first exception to the general rule, which may apply if there is a special relationship between the plaintiff and the defendant. *See id.* In Minnesota, a special relationship has been recognized in limited situations, such as "those of an innkeeper and a guest, a common carrier and a passenger, and a hospital and a patient." *H.B. by Clark v. Whittemore*, 552 N.W.2d 705,

707 (Minn. 1996). Both parties assert that the relationship between a school and its students is the type of special relationship that gives rise to the first exception, though neither party cites any authority for that proposition. Regardless, we need not decide whether there is a special relationship between a school and its students because any such duty would be owed only to a school's students but not to members of the general public, such as Fenrich and her husband. Thus, the first exception does not apply in this case.

▮ The parties dispute whether this case is within the second exception to the general rule, which may apply if the defendant's own conduct creates a foreseeable risk of harm to a foreseeable plaintiff. *See* 845 N.W.2d at 178. Whether this exception applies depends in part on the distinction between nonfeasance and misfeasance. *See id.*; *Domagala*, 805 N.W.2d at 22. Because of the general rule described above, a person may not be held liable for nonfeasance, *i.e.*, for "'passive inaction or a failure to take steps to protect [others] from harm.'" 845 N.W.2d at 178 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56 (5th ed. 1984)). But, in appropriate circumstances, a person may be held liable for harm caused by a third party if the person engaged in misfeasance, *i.e.*, "'active misconduct.'" *Id.* (quoting Keeton et al., *supra*, § 56). Accordingly, if a person "acts in some manner that creates a foreseeable risk of injury to another," the person "is charged with an affirmative duty to exercise reasonable care to prevent his conduct from harming others." *Domagala*, 805 N.W.2d at 26. In other words, "The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all." *Id.* at 22 (quoting *H.R. Moch Co. v.*

*Rensselaer Water Co.*, 247 N.Y. 160, 167, 159 N.E. 896, 898 (1928), in parenthetical).

In light of the second exception, a school may have a duty of reasonable care to prevent harm caused by a student who drives a private vehicle in connection with a school-sponsored extra-curricular activity. In *Verhel by Verhel v. Independent Sch. Dist. No. 709*, 359 N.W.2d 579 (Minn. 1984), a high-school cheerleader drove herself and other cheerleaders in her family's vehicle as part of the cheerleaders' efforts to decorate the homes of student-athletes. *Id.* at 584. The student-driver's negligence caused an accident, which injured another cheerleader in the vehicle. *Id.* On appeal, the school argued that it had no duty to protect the student-passenger from the negligence of the student-driver because the cheerleaders' decorating activity "was not specifically approved or sponsored by the school" and because the decorating activity "took place off school premises, during summer vacation, on a weekend, in the early morning hours." *Id.* at 586. The supreme court reasoned that the existence of a duty turned on "whether the school district had assumed control and supervision over cheerleading . . . so as to have a duty to provide regulations and supervision for squad members while engaged in cheerleading activities." *Id.* at 587. The supreme court determined that the school "had assumed control and supervision over the cheerleading squad and its activities, including its transportation arrangements," *id.*, based on evidence that, among other things, the school had approved of the cheerleading squad, the school had assigned a faculty member the responsibility to "direct and sponsor" the squad, *id.* at 583, and the assigned faculty member was responsible for providing transportation or approving transportation arrangements and had done so in the past, sometimes by "disallowing certain transportation arrangements," *id.* at 587-88. Thus, the su-

preme court affirmed a jury's verdict that the school was liable for its own negligence. *Id.* at 590.

■ In this case, the district court determined that Fenrich's evidence, when viewed in the light most favorable to her, was sufficient to create a genuine issue of material fact as to whether the school had assumed control and supervision over the cross-country team's participation in the Nike meet. The district court analyzed that issue as follows:

The issue in the present case is whether the school had assumed control and supervision over cross country so as to have a duty to provide regulations and supervision for team members while engaged in cross country activities and whether, on the facts of this case, the Nike Meet was such an activity. There seems to be no dispute that cross country is a school-approved activity and that the school assumed control and supervision over the cross country team and its activities, including its transportation, during the cross country athletic season. The question becomes in this case, whether the school's responsibility continued until the Nike Meet, which took place approximately one week after the final MSHSL sanctioned cross country meet.

Plaintiff has provided sufficient factual evidence to permit a reasonable person to draw a conclusion that The Blake School assumed control and supervision over the cross country team's transportation to and from and participation in the Nike Meet. These facts include: the Nike Meet was a traditional meet that the members of the team participated in, a coach paid a bulk registration fee for the team, a coach made sure everyone had arranged transportation to and lodging at the meet, the team was "en-

couraged" to participate in the Nike Meet as a good way to end the season, the team met at a coach's house and departed as a caravan of vehicles, and the coaches arranged for a former team athlete to continue practices after the MSHSL-sanctioned season had ended.

This part of the district court's analysis is consistent with the applicable caselaw. *See* 845 N.W.2d at 178; *Verhel*, 359 N.W.2d at 587-88. It also is consistent with the evidentiary record and the procedural posture of the case. Fenrich introduced evidence that the school's agents were not passive but, rather, were active in the sense that they took actions that created a situation that presented some degree of risk of injury to others. Specifically, the school sponsored the cross-country team and devoted resources to it. Even though the MSHSL season had ended, the school's coaches encouraged team members to participate in the Nike meet and coordinated their participation. The assistant coach attended a mid-week practice to facilitate team members' transportation to and from the Nike meet. The assistant coach agreed to drive some of the team members to the meet. Importantly, the assistant coach communicated with T.M.'s mother about transportation and approved of her suggestion that T.M. drive himself and other team members to the meet. The assistant coach specified a place where some team members would meet before beginning the trip to Sioux Falls, and he suggested that the volunteer coach ride in T.M.'s vehicle. This evidence, taken in the light most favorable to Fenrich, is capable of proving that the school assumed control and supervision over team members' transportation to and from the Nike meet and, thus, is capable of proving that this is a case of misfeasance rather than nonfeasance. *See* 845 N.W.2d at 178.

This case is different from cases in which a school had no duty to protect others from a student's negligent driving because the school had not assumed control and supervision over the activity that required transportation or the matter of transportation itself. *See, e.g., Collette v. Tolleson Unified Sch. Dist. No. 214*, 203 Ariz. 359, 54 P.3d 828, 832-33 (Ariz. Ct. App. 2002) (concluding that school did not owe duty to person injured by student who was driving from school to mall for lunch in violation of school policy); *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.4th 925, 80 Cal.Rptr.2d 811, 968 P.2d 522, 525, 529 (1998) (concluding that school did not owe duty to person injured by student who was exiting school parking lot at end of school day); *Wickey v. Sparks*, 642 N.E.2d 262, 264-65, 268 (Ind. Ct. App. 1994) (concluding that school did not owe duty to person injured by student driving between school and off-campus building for vocational instruction); *Thompson v. Ange*, 83 A.D.2d 193, 443 N.Y.S.2d 918, 919-20 (1981) (same). If the Blake coaches had not assumed control and supervision over team members' participation in the Nike meet and their transportation arrangements, this would be a case of alleged nonfeasance, not alleged misfeasance. But the evidence shows that the school's coaches affirmatively took steps to make a transportation plan and to execute the plan.

 Even though the district court stated that the school assumed control and supervision over the team's transportation to the Nike meet, the district court determined that the school did not owe Fenrich and her husband a duty of reasonable care. The district court reasoned, in essence, that a school may owe a duty of reasonable care to its students but that, as a matter of law, a school never owes a duty of reasonable care to the general public. The district court cited only one

case for this proposition: *Gylten v. Swalboski*, 246 F.3d 1139 (8th Cir. 2001) (applying Minnesota law). But the analysis in *Gylten* is based on the evidence in that particular case, not on a broad rule of law. *Id.* at 1144-45. The *Verhel* opinion concerned a school's duty of reasonable care to a student, but there is no language in that opinion stating a school owes a duty of reasonable care *only* to its students. *See* 359 N.W.2d at 588-89; *cf. Hamilton v. Independent Sch. Dist. No. 114*, 355 N.W.2d 182, 184-85 (Minn. App. 1984) (concluding, without addressing issue of duty, that non-student asserting negligence claim against school introduced sufficient evidence of causation). In its responsive brief, the school makes an argument that is as broad as the district court's reasoning; the school asserts that "Minnesota law does not recognize any duty on the part of Respondent School to protect members of the public from negligent acts of its students, occurring off of school property." Contrary to the district court's reasoning and the school's argument, the general principles of law discussed above do not foreclose the possibility that a school might owe a duty of reasonable care to persons other than its students. A school may owe a duty of reasonable care to members of the general public if the school's " 'own conduct creates *a foreseeable risk* of injury to a *foreseeable plaintiff.*' " 845 N.W.2d at 177 (quoting *Domagala*, 805 N.W.2d at 23). If there is sufficient evidence that the school engaged in misfeasance, the existence of a duty of reasonable care to protect the general public from injury caused by a student depends on "the probability or foreseeability of injury to the plaintiff." *See Domagala*, 805 N.W.2d at 26.

### C.

We continue by considering whether the risk of a collision between T.M.'s vehicle and the Fenrichs' vehicle was foreseeable.

If "a person acts in some manner that creates a foreseeable risk of injury to another, the actor is charged with an affirmative duty to exercise reasonable care to prevent his conduct from harming others." *Id.* The issue of foreseeability "is ordinarily 'properly decided by the court prior to submitting the case to the jury.' " *Id.* at 27 (quoting *Alholm · v. Wilt*, 394 N.W.2d 488, 491 n.5 (Minn. 1986)). "In close cases, the issue of foreseeability should be submitted to the jury." *Id.* (citing *Whiteford ex rel. Whiteford v| Yamaha Motor Corp.*; 582 N.W.2d 916, 918 (Minn. 1998)); *see also Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 631-33 (Minn. 2017) (analyzing foreseeability in context of product-liability case).

"To determine whether the risk of injury to the plaintiff is 'foreseeable,' we 'look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility.' " 845 N.W.2d at 178 (quoting *Whiteford*, 582 N.W.2d at 918), "If the connection between the danger and the defendant's own conduct is too remote, there is no duty." *Id.* (citing *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986)). "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of an accident was clear to the person of ordinary prudence.' " *Domagala*, 805 N.W.2d at 27 (quoting *Connolly v. Nicollet Hotel*, 254 Minn. 373, 382, 95 N.W.2d 657, 664 (1959)). The issue of foreseeability "depends heavily on the facts and circumstances of each case." 845 N.W.2d at 179.

In this case, the summary-judgment record does not contain evidence that is capable of proving that the probability that T.M. would cause an automobile accident was high enough to make such an accident

foreseeable. Granted, T.M. was young. But he was licensed to drive and, thus, was permitted by law to drive from the Twin Cities to Sioux Falls. In addition, his mother had informed the school's coaches that there were no restrictions on his license that prevented him from carrying more than one unrelated passenger. *See* Minn. Stat. § 171.055, subd. 2(c) (2010). Fenrich offered no evidence that T.M. had driven carelessly in the past or otherwise was unlikely to drive safely, and there is no evidence that the school's coaches were aware of any such tendencies. The only evidence in the record concerning T.M.'s driving abilities is his mother's e-mail message to the assistant coach, which states that she and T.M.'s father—two persons likely to have relevant, first-hand knowledge and a strong interest in a safe voyage—were "very comfortable with [his] driving skills."

The evidence in this case is different from the evidence in cases in which an automobile accident involving a teenage driver was deemed to be foreseeable. For example, in *Verhel*, there was a general "lack of supervision and organization of the students," who conducted their decorating activities on their own during the middle of the night, without the presence of an adult. 359 N.W.2d at 590 (quotation omitted). In addition, the student-driver "was feeling tired at the time of the accident" because she had played sports during the day, had worked at a job during the early evening, and then had participated in the cheerleaders' activities until the accident occurred at 5:00 a.m. *Id.* at 590; *see also id.* at 584. Another example of a foreseeable accident involving an inexperienced driver is *Jones v. Fleischhacker*, 325 N.W.2d 633 (Minn. 1982), in which a father allowed his son, who had a driver's permit but not a driver's license, to drive a vehicle. *Id.* at 635. The son picked up three friends and went on a reckless "joyride,"

which resulted in an accident that injured one of his passengers. *Id.* On appeal from a jury's verdict in favor of the plaintiff, the supreme court acknowledged that the evidence of foreseeability "is not plentiful" but affirmed the jury's finding that the father was liable on the ground that the father should have realized that his son was overly eager to drive the father's vehicle and would take full advantage of the opportunity to do so. *See id.* at 640.

In this case, there is no such evidence. T.M. held a driver's license, which means that he had at least the minimum amount of driving experience required by law to obtain a provisional driver's license. *See* Minn. Stat. § 171.055, subd. 1. In addition, T.M.'s mother had informed the assistant coach that she and T.M.'s father had considered his driving abilities and approved of his driving on this particular occasion, which gave the assistant coach reason to believe that T.M. was likely to safely drive from the Twin Cities to Sioux Falls. T.M. was following the assistant coach's vehicle at the time of the accident. The accident occurred early in the day, and there is no evidence that T.M. was not well rested. These facts are similar to the facts of *Gylten*, in which a teenage student-driver caused an accident that injured a member of the general public while driving to an extra-curricular activity. 246 F.3d at 1141, 1144-45. The United States Court of Appeals for the Eighth Circuit concluded that the school did not owe a duty of reasonable care to the general public because the plaintiffs introduced "no evidence that [the] school district knew or should have known that [the student-driver] was anything but an average licensed driver who had been granted parental permission to drive his car to school," no evidence that the student had driven "in an unsafe manner" before the accident, and no evidence

that the school had been put on notice that he was a careless driver. *Id.* at 1144.

Thus, in light of the evidence in the summary-judgment record and the applicable caselaw, we conclude that the automobile accident in this case was not foreseeable. Therefore, the school did not owe a duty of reasonable care to members of the general public to prevent harm caused by T.M.

## DECISION

The district court did not err by granting the school's motion for summary judgment with respect to Fenrich's claim that the school was negligent.

**Affirmed.**