## ERNEST J. DeCOURCY, TRUSTEE FOR HEIRS OF IRENE M. DeCOURCY, v. THE TRUSTEES OF THE WESTMINSTER PRESBYTERIAN CHURCH, INC., OF MINNESOTA, d. b. a. ABBOTT HOSPITAL.

134 N. W. (2d) 326.

April 9, 1965—No. 39,187.

*Warner, Ratelle & Hennessy*, for appellant.
*Mahoney & Mahoney*, for respondent.

ROGOSHESKE, JUSTICE.

Irene M. DeCourcy died on January 6, 1960, at the age of 61, while a patient at defendant's hospital. Her husband, as trustee for her heirs, brings this action for damages, claiming that due to defendant's negligence decedent suffered a fracture of her hip during her hospitalization which contributed to cause her death. At the close of plaintiff's evidence, the court directed a verdict for defendant upon the ground that the evidence would not support a finding that the fracture contributed to cause decedent's death.

Under the assignments of error the only question presented is the sufficiency of the evidence to require submitting to the jury (a) whether the fracture contributed as a cause of her death, and if so, (b) whether that injury was caused by defendant's negligence.

Decedent entered the hospital on December 24, 1959, on the advice of her doctor for treatment of a high temperature and a cold. She was a frail woman, her weight varying between 90 to 95 pounds. Since 1932, when she contracted tuberculosis, she was frequently ill. During the period that she suffered from this disease, she had one lung collapsed. After arrest of the tuberculosis she was hospitalized a number of times. In 1957, the collapsed lung was surgically removed at defendant's hospital. At that time she was a patient at the hospital for a month and was bedridden for 6 months thereafter. During the latter period, she contracted infectious hepatitis. This condition recurred in September 1958, and she again entered defendant's hospital for treatment. It was in this period that she first manifested signs of being frequently confused, incoherent, and disoriented. In May 1959, she suffered a stroke. In the interval between 1958 and December 24, 1959, she was hospitalized many times, usually at defendant's hospital. Although she was able to attend to her household duties when not hospitalized, she was weak, ill-nourished, and run down.

The records describe her condition upon entering the hospital on December 24 as:

"* * * complex history—admitted now because of weakness, dizziness, & temp[erature] of 102 at home."

Viewing the inferences to be drawn most favorably to plaintiff from his testimony and the hospital records, it could be found that the defendant's employees were aware that decedent was suffering severe headaches, excessive perspiring, dizziness, fever, dyspnea, nausea, lethargy, and confusion, and that her condition was such that she "should be watched," as requested by her husband. Bedrails were attached to the sides of her bed, but apparently they were not placed in a position to restrain her from getting out of bed prior to December 27 when she told defendant's employees that she fell between 6 and 7

p. m. X rays revealed that she suffered a fracture of the neck of the right femur with displacement affecting the hip joint. Thereafter, she received rather constant attention including the services of a special-duty nurse. Although she appeared to be somewhat improved before she sustained the fracture, thereafter her condition deteriorated until she died in her sleep in the early morning of January 6, 1960.

Plaintiff called Dr. William G. Guthrie, the coroner, and introduced the death certificate prepared by him. It contained the following:

"18. Cause of Death

"Part I. Death Was Caused by:

"Immediate Cause (a)—Multiple small pulmonary emboli, right lung

"Part II. Other Significant Conditions Contributing to Death but Not Related to the Immediate Cause Given in Part I(a)—Fracture neck right femur. Occlusion anterior descending coronary, old."

The coroner was not asked to give his interpretation of the words employed in the certificate or to otherwise explain his opinion of the cause of death. The pathologist who performed an autopsy at defendant's request appeared at trial and plaintiff called him for cross-examination under the rules, but the court sustained defendant's objection that he was not defendant's employee and no testimony was elicited from him. His written report attached to decedent's hospital record was withdrawn upon the joint request of plaintiff and defendant. The attending physician, although available, was not called, and no other medical testimony was submitted, plaintiff choosing to rely upon the death certificate as proof that the fracture contributed to cause death.

It was plaintiff's position at trial and here that since the death certificate is prima facie evidence of the facts stated therein,[1] the facts thus revealed, considered in the light of the evidence, were sufficient to permit the jury to find that the fracture was a contributing cause of death. The trial court expressly held that "without regard to how the fracture of the right femur happened, whether that was through negli-

---

[1]Minn. St. 144.163 and 144.167.

gence or not, there is not sufficient evidence" that it was a proximate cause of death. We agree.

It was incumbent on plaintiff to introduce evidence which would afford a reasonable basis for the conclusion that it was more likely than not that the fracture was either the originating cause of the pulmonary emboli, the immediate cause of death, or that it concurred with that cause as a substantial factor in producing death. Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Restatement, Torts, §§ 431, 432(2). A mere possibility of such causation is not enough, as such a conclusion amounts to mere speculation or conjecture. Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 59 N. W. (2d) 883.

Where the evidentiary basis upon which a conclusion concerning causation in fact is urged requires a knowledge and understanding of matters not within the common knowledge of laymen, such as the meaning and significance of medical terms, expert testimony is necessary to provide a sufficient basis for the conclusion.[2] Without such testimony, there exists no adequate foundation for passing judgment, and any conclusion drawn necessarily rests upon speculation and conjecture. Saaf v. Duluth Police Pension Relief Assn. *supra*.[3]

The causes of death listed in the death certificate are not ones that any layman of average knowledge and experience could reasonably be expected to separate and evaluate without the aid of a medical expert. When considered in the light of the evidence, including the medical history of decedent, the significance of the terms used becomes more, rather than less, abstruse. While the certificate indicates that the fracture was one condition "Contributing to Death," it also indicates it was "Not Related to the Immediate Cause." As such, it is manifestly ambiguous for it fails to exclude the possibility that the pulmonary emboli alone were the cause of death. This is not a case where as a matter of common knowledge or ordinary experience the injury contributed

---

[2]Prosser, Torts (2 ed.) § 41; Harris v. Wood, 214 Minn. 492, 8 N. W. (2d) 818.

[3]See, also, Wallstedt v. Swedish Hospital, 220 Minn. 274, 19 N. W. (2d) 426; Zappa v. Charles Mfg. Co. 260 Minn. 217, 109 N. W. (2d) 420.

564

to death, nor is it one involving simple medical matters which a layman may be competent to judge. In such cases, a death certificate may well be sufficient proof of the cause of death. Where a death certificate is susceptible of varied interpretations, it cannot serve as a substitute for expert medical testimony. The death certificate here is not sufficient because it does not afford a reasonable basis for finding that the fracture was either the originating or contributing cause of death without indulging in speculation or conjecture. In such a case, it is the duty of the court to direct the verdict.

Affirmed.