# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1075

_____

|  |  |  |
|---|---|---|
| Keith Brunsting; Cheri Brunsting, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Lutsen Mountains Corporation; Lutsen | * | |
| Mountains Lodging Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 22, 2009
Filed: April 13, 2010

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Keith and Cheri Brunsting[1] appeal the district court's grant of summary judgment in favor of the defendants Lutsen Mountains Corporation and Lutsen Mountains Lodging Corporation (collectively "Lutsen"), in this negligence action.

_____

[1]Although Keith Brunsting's claims sound in negligence, his wife, Cheri Brunsting, brought a claim for loss of consortium. Her claim was derivative, see Huffer v. Kozitza, 375 N.W.2d 480, 482 (Minn. 1985), and was also disposed of at summary judgment. Because Cheri Brunsting's claim derives entirely from her husband's claim, we refer only to Keith Brunsting in our discussion.

We reverse the grant of summary judgment and remand the matter to the district court for further consideration.

## I.

We recount the evidence in the light most favorable to Keith Brunsting. Brunsting, who worked for a printing company in Sioux Falls, South Dakota, was a 48-year-old intermediate skier who skied approximately three times per year. This case arises out of an accident that occurred on February 26, 2004, at Lutsen Mountains, a ski resort 90 miles northeast of Duluth, Minnesota. On that day, Brunsting and his friend, Trace Benson, were skiing at Lutsen, where Brunsting had skied approximately ten times before. After skiing during the morning and stopping for lunch, the pair continued skiing, taking the Timberwolf chairlift to the top of the mountain and skiing down the Alpha run. Alpha is a groomed, intermediate-level run that runs near or below the Timberwolf chairlift. After reaching the bottom, the men took the Timberwolf chairlift back to the top of the mountain.

Brunsting then proceeded down the Alpha run again, while Benson waited behind at the top of the mountain. As Brunsting made his way down, he was spotted by two off-duty Lutsen employees—Sherry Christiansen and Henry Walch—who were on the Timberwolf chairlift. They witnessed Brunsting skiing down the run, then lose control and crash headfirst into a tree near the edge of the Alpha run. There was a partially exposed tree stump near the area where Brunsting had lost control and crashed.

Shortly thereafter, Benson—who did not witness the accident—began making his way down Alpha and soon came across Brunsting lying unconscious in the snow and bleeding from the mouth. From the chairlift, Christiansen saw Benson approach Brunsting and she yelled down at him to alert him of the accident. Christiansen and Walch arrived at the scene a short time later, having alerted Lutsen personnel at the

top of the mountain of the accident. At that point, according to Benson, Christiansen told him that she "saw [Brunsting] stumble on a stump, then fall into a tree, hitting the tree with his head."[2] A few moments later, a group of off-duty nurses who happened to have been skiing in the vicinity joined the scene. Because Brunsting was seriously injured and did not appear to be breathing, and looked blue, the nurses began performing CPR. They were able to get Brunsting breathing again, after which ski patrol personnel arrived and took Brunsting down the mountain for further medical attention. As a result of the brain injury Brunsting suffered that day, he has no memory of the accident or anything else about the trip to Lutsen Mountains. He is permanently disabled and is no longer able to work.

In February 2006, Brunsting brought suit in the District of South Dakota against Lutsen arguing that Lutsen was negligent in the design, maintenance, operation, and

---

[2]Christiansen's first written account comports with this alleged statement at the scene. This written account, completed shortly after the accident, specifically referenced the "exposed tree stump" and stated that "[i]t 'seems' like some part of the terrain may have caused him to lose control like that." Appellants' App. 114-15. But, Christiansen later distanced herself from her statement to Benson and her mention of the stump in the first written account. Two months later, she opined in a second written statement meant to "clear up" the written statement she gave the day of the accident, that "[f]rom my recollection the skier didn't hit either the stump or the berm or anything that appeared to be part of the terrain that would have caused him to lose control," and that she was "sure he didn't take a path over [the stump and berm.]" Appellants' App. 117-19. Four years later, her deposition testimony was firmer still, stating:

> It didn't seem like he should even hit the tree, because he didn't look like he was having any trouble at all. That's why it looks like a cartoon, that's why I describe it that way. . . . Almost like it was intentional, you know, what I mean, you picture like a silly cartoon, like they ski right into a tree, and boop, you know.

Appellants' App. 91.

supervision of its ski facilities by failing to remove a tree stump that caused Brunsting to lose control and crash. After the case was transferred to the District of Minnesota, Lutsen filed for summary judgment on all claims, arguing that there was no admissible evidence to prove that Brunsting struck a stump before colliding with the tree, and, alternatively, that Brunsting's claim was barred by the doctrine of primary assumption of risk. Brunsting opposed the motion, relying in part on three pieces of evidence discussed by the district court: (1) circumstantial evidence that Brunsting was a cautious skier who rarely fell; (2) evidence of a mark, made by a ski, on the edge of the tree stump in question; and (3) Christiansen's statement to Benson about seeing Brunsting stumble on a stump.

Following a hearing, the district court granted Lutsen's motion for summary judgment. The court highlighted certain of Brunsting's circumstantial evidence and held that under Minnesota law there was insufficient evidence of causation to support Brunsting's negligence action. As to Christiansen's alleged statement to Benson regarding the stump, the court held it was inadmissible hearsay. The court noted that, even assuming Christiansen did in fact make the statement, the statement did not qualify as an excited utterance where it was made four to five minutes after witnessing Brunsting's fall, it was made in response to Benson's inquiry and not spontaneously, Christiansen showed no outward signs of being in an excited state when she made the statement, and Christiansen and Brunsting were strangers. Because the statement was inadmissible hearsay, it could not support Brunsting's opposition to summary judgment. Accordingly, the court granted summary judgment in favor of Lutsen.[3]

---

[3]Lutsen also argued that the doctrine of primary assumption of risk operated to bar Brunsting's claim. Because the district court granted summary judgment based on a lack of evidence demonstrating causation, it declined to rule on Lutsen's assumption of risk argument. "[W]e do not usually address issues that have not been considered by a district court[,]" Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827, 831 (8th Cir. 2000), thus we also decline to address Lutsen's assumption of risk argument.

## II.

Brunsting appeals the district court's grant of summary judgment, arguing that the district court improperly excluded Christiansen's statement regarding the cause of Brunsting's accident and that the court should have admitted the statement as an excited utterance. Brunsting further argues that even without Christiansen's utterance, he presented sufficient evidence of causation to defeat summary judgment. We address these arguments in turn.

## A.

Turning first to Christiansen's alleged statement to Benson and whether it should be considered as evidence of causation upon remand, we begin with the premise that the Federal Rules of Evidence generally prohibit admissions of hearsay evidence, Federal Rules of Evidence 802, and note that inadmissible hearsay evidence cannot be used to defeat summary judgment. Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005). Benson claims that at the scene he asked what happened and Christiansen told him "that she saw [Brunsting] stumble on a stump, then fall into a tree, hitting the tree with his head." Appellants' App. 35. Christiansen's statement to Benson, as described by Benson in his affidavit, is hearsay, as it is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). But, Brunsting argues this statement is admissible.

One well-recognized exception to the hearsay rule is found in Rule 803(2), which excepts from the hearsay rule any "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). At its essence, the hallmark of all exceptions to the hearsay rule is the "guarantee of trustworthiness." Miller v. Keating, 754 F.2d 507, 510 (3rd Cir. 1985). The rationale behind this particular exception

"derives from the teaching of experience that the stress of nervous excitement or physical shock 'stills the reflective faculties,' thus removing an impediment to truthfulness." United States v. Sewell, 90 F.3d 326, 327 (8th Cir. 1996) (quoting United States v. Elem, 845 F.2d 170, 174 (8th Cir. 1988)). As a result, "[f]or the excited utterance exception to apply, the declarant's condition at the time of making the statement must be such that 'the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation.'" Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999) (quoting United States v. Iron Shell, 633 F.2d 77, 86 (8th Cir. 1980)).

Thus, to establish that a hearsay statement qualifies as an excited utterance, the proponent must prove three elements: "(i) that the statement was in reaction to a truly startling event; (ii) that the statement was made under the stress of excitement caused by that event; and (iii) that the statement relates to the event." Glen Weissenberger & James J. Duane, Weissenberger's Federal Evidence § 803.8 (5th ed. 2006).

> To determine whether a declarant was still under the stress of excitement caused by an event when a statement was made, we consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. We also examine whether the declarant's stress or excitement was continuous from the time of the event until the time of the statements.

United States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007) (internal quotations omitted). As the party attempting to show that a hearsay exception applies, Brunsting bears the burden of demonstrating that Christiansen's statement was an excited utterance. See Reed, 198 F.3d at 1061.

We note that our review of this issue is limited. Determinations as to the admissibility of evidence lie within the sound discretion of the district court, and we

review those determinations under an abuse of discretion standard, even at summary judgment. Morgan v. United Parcel Serv. of Am., Inc., 380 F.3d 459, 467 (8th Cir. 2004); Yates v. Rexton, Inc., 267 F.3d 793, 802 (8th Cir. 2001). This deferential standard recognizes that the district court has a range of choices, and its decision will not be disturbed as long as it stays within that range, is not influenced by any mistake of law or fact, and does not reflect a clear error of judgment in balancing relevant factors. Walker v. Bonenberger, 438 F.3d 884, 890 (8th Cir. 2006); see also United States v. Bailey, 571 F.3d 791, 804 (8th Cir. 2009) ("A district court abuses its discretion when it bases its decision on a legal error or a clearly erroneous finding of fact.") (quotation omitted); United States v. Boswell, 270 F.3d 1200, 1204 (8th Cir. 2001) ("This court must determine whether or not the district court made a clear error of judgment in weighing the facts on the basis of the record before it.").

Here, we find the district court abused its discretion on two fronts: in its analysis of whether Christiansen's statement was made in reaction to a truly startling event, and whether the statement was made under the stress of excitement caused by that event. As to the first element regarding the existence of a truly startling event, perhaps the error of the district court is best articulated as its failure to identify the entirety of the "event" for purposes of the Rule 803(2) discussion. The court seems to have truncated the event, limiting its discussion of Christiansen's statement relative only to the singular event of Christiansen's witnessing of Brunsting's impact with the tree. For example, the court discusses the "four to five minutes" between the accident and Christiansen's statement to Benson, necessarily implying that the "startling event" occurred on the chairlift. Limiting the discussion in that manner was an abuse of discretion. It was the whole of the event that is relevant for purposes of the Rule 803(2) analysis: witnessing a near-fatal traumatic accident from the chairlift and immediately rushing to the scene where Brunsting was unconscious, bleeding from the mouth, turning blue and believed to be near death, as others tried to stabilize him until medical assistance arrived. It was a chaotic scene and Christiansen realized the gravity of the accident–that she might indeed be witnessing a man's death. The

difference between the two definitions of what constitutes the "event" for purposes of the Rule 803(2) analysis is pivotal, as there was little or no time lapse between the latter-defined "event" and the statement at issue because the statement was made contemporaneously with the singular startling event.

The court further erred in its conclusion that "Brunsting provides no evidence that Christiansen in particular was in an extremely alarmed condition at the time the statement was made beyond . . . generalized observations regarding the group's demeanor." Brunsting, Civ. No. 07-4192, slip op. at 8. In doing so, the court rejected one of Brunsting's arguments that because Christiansen was "panicked and anxious" when she skied down the hill from the accident area, she must have been in an excited state at the scene. The court responded that "Christiansen's fear for her own safety when skiing down the hill does not indicate that her prior statement was made in an excited state without reflection or deliberation." Id. at 8-9 n.8. These cabined findings defy the myriad evidence presented in the record.

Curiously, in its analysis on this point, the district court relied almost exclusively on Benson's affidavit, when Christiansen's own deposition testimony on the matter is most illustrative of her then-current state of mind. According to her own testimony, after seeing Brunsting hit the tree from her chairlift, Christiansen traveled the "little bit" to get to the top (although "it seemed like a long time"), "immediately waved down the person in the lift shack," and notified them of the accident so that they could call for help because "it's bad, it's got to be bad." Appellants' App. 89. Christiansen testified that she was "just frantic." Id. She and her skiing partner then traveled to the scene and took their skis off. Id. Christiansen was "afraid" to go near Brunsting (she was "scared" to get close) and was relieved when the three other women arrived, who she later learned were nurses. Id. at 89, 91. Christiansen "thought, well this is–this is good, because they can take over. I was sort of panicked and wasn't sure what I was going to do anyway." Id. at 89. She remembers the women "saying, he looks so blue, he looks so blue. And I was just thinking, oh–oh

my gosh, I just saw someone die today." Id. at 94. Christiansen recalls that waiting for the ski patrol to arrive "seem[ed] like an eternity" because they were "waiting for someone to come and save someone's life." Id. at 105. After the ski patrol removed Brunsting, Christiansen herself skied down "really slow." Id. at 94. She "remember[s] just being so nervous . . . [and was] so panicked and anxious from what had just happened that [she] just felt shaky, so [she] went really, really slow." Id. Christiansen does not remember traveling on the ski lift again herself just after the accident as she made her way off the mountain, nor does she remember if she had to work that day. Id. at 95. She "was just wanting to get off of the ski hill," and remembers going "down to the bar and [having] a beer just to try and relax." Id. Indeed, the entire incident "haunted" Christiansen so much that she recalls skiing only one more time after that. Id. at 107. This evidence establishes that Christiansen was still under the stress of excitement from the event when the statement was made.

Finally, there are other relevant factors that the district court failed to balance in the excited utterance equation. First, Christiansen's status as an employee of Lutsen bolsters the conclusion that her immediate statements were not the product of reflective thought. We readily acknowledge that the discussion today does not involve admissions by a party-opponent admissible under Rule 801(d)(2), but the relationship is still notable in our analysis of whether Christiansen was under the stress of excitement caused by the accident. That an employee of Lutsen would spontaneously make such an inculpatory statement buttresses the conclusion that it was not the product of reflection and deliberation. Too, the inconsistencies between the statements Christiansen made at the scene and in her first written statement given the day of the accident; and the statements she provided two months and four years later, respectively, under the tutelage of the Lutsen people and counsel (necessarily the product of greater reflection and deliberation), enhance the veracity and credibility of the statements she made the day of the accident. At the very least, this suspect change of tune must give us pause in our consideration. The consistency of the separate statements made the day of the accident gives credence to the fact that they

were given without reflection or deliberation under the stress and excitement of the event. The district court abused its discretion in only crediting Christiansen's later statements and failing to balance these factors in its analysis.

Reviewing the evidence in light of the elements required to support an excited utterance finding under Rule 803(2), Christiansen's own deposition evidence clearly indicates that when Christiansen arrived at Brunsting's side after witnessing his traumatic injury, saw his grave and disturbing medical condition, and made the statements that Benson testified under oath that she made, she was "under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). In light of this evidence, and viewing the "event" at issue through the appropriate lens, we cannot hold that the district court chose from merely two permissible views of the evidence, or range of choices, but rather erred in its analysis as only one conclusion is apparent. Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004). The district court abused its discretion in its determination that Christiansen's statement to Benson was inadmissible hearsay. It should be included in the evidentiary record upon remand as an excited utterance under Rule 803(2).

B.

As to the district court's determination regarding causation, we review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Moore v. Indehar, 514 F.3d 756, 761 (8th Cir. 2008). We will affirm the grant of summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing a lack of genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A mere "scintilla of

evidence" is insufficient to defeat summary judgment, id. at 252, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate. Id. at 256.

In a diversity action such as this, we apply state substantive law. Gylten v. Swalboski, 246 F.3d 1139, 1141 (8th Cir. 2001). To prevail on a negligence claim under Minnesota law, Brunsting must prove: (1) that Lutsen had a legal duty to Brunsting to take some action; (2) that Lutsen breached that duty;[4] (3) that the breach of that duty was the proximate cause[5] of Brunsting's harm; and (4) damage. Id. (citing Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999)). Proximate cause exists if "the negligent conduct was a substantial factor in bringing about the injury." Lietz v. N. States Power Co., 718 N.W.2d 865, 872 (Minn. 2006); see also Restatement (Second) of Torts § 431 (1965) (discussing the "substantial factor" test of proximate causation).

Generally, proximate cause is a question of fact for the jury. Canada v. McCarthy, 567 N.W.2d 496, 506 (Minn. 1997). "However, when reasonable minds could reach only one conclusion, the existence [or not] of proximate cause is a question of law." Id.; see also Smith v. Kahler Corp., 211 N.W.2d 146, 151 (Minn. 1973) ("[C]ausation, like negligence itself, is a fact issue for the jury except when the facts are undisputed and are reasonably susceptible of but one inference."). To

---

[4]The district court based its grant of summary judgment on its discussion of causation, not whether Lutsen breached its duty. As such, our analysis is equally limited today. The precise question here is the existence, or not, of a genuine issue of material fact on whether Lutsen's failure to remove the stump was a proximate cause of Brunsting's accident.

[5]Although we speak in terms of proximate cause, Minnesota courts have made clear that proximate cause analysis also includes questions of factual, or but-for, causation. George v. Estate of Baker, 724 N.W.2d 1, 10-11 (Minn. 2006).

establish proximate cause, a plaintiff need not rely solely on direct evidence, but "circumstantial evidence must be consistent to the extent that it furnishes a reasonable basis for supporting an inference by the jury of the ultimate fact that the defendant's negligence caused the plaintiff harm." McCarthy, 567 N.W.2d at 506. "A mere possibility of such causation is not enough" to establish proximate cause. DeCourcy v. Trs. of Westminster Presbyterian Church, Inc., 134 N.W.2d 326, 328 (Minn. 1965).

Apart from the hearsay testimony discussed above, Brunsting offered circumstantial evidence to prove that the tree stump was the cause of the accident. The district court identified only two pieces of circumstantial evidence. First, that Brunsting "was an intermediate skier who was cautious, rarely fell," and was "skiing safely" that day. Brunsting v. Lutsen Mountains Corp., Civ. No. 07-4192, slip op. at 5 (D. Minn. Dec. 30, 2008) (quotation omitted). Second, Benson noticed "a ski carve mark over the edge of the stump[,]" indicating that someone had skied directly over the stump, though he could not be sure when it was made or by whom. Id. at 6 (quotation omitted).

In his opposition to Lutsen's motion for summary judgment, Brunsting pointed to additional circumstantial evidence. For example, Brunsting noted that, in the accident report that Christiansen filled out on the day of the accident, she stated that "[i]t 'seems' like some part of the terrain may have caused [Brunsting] to lose control." Appellants' App. 114-15. Walch also stated in his deposition that Brunsting "had, you know caught something with [his] ski, like a root."[6] Id. at 194. At the scene of the accident, Benson walked back up the hill to examine the stump, presumably because he felt it played some role in Brunsting's accident. Additionally, the stump was in an area of smooth, groomed snow on an intermediate run, where skiers would not expect to come upon such an obstacle.

_____

[6]Later in his deposition, Walch clarified that he was referring to a rut or divot in the snow, not a tree root. Appellees' Separate App. 79.

Viewing this evidence in the light most favorable to Brunsting, we find a genuine issue of material fact exists as to whether Lutsen's failure to remove the stump was a proximate cause of Brunsting's accident, because a reasonable jury could conclude that Brunsting hit the stump or that the stump otherwise caused his accident. The circumstantial evidence adduced by Brunsting as to causation is sufficient to overcome summary judgment if "it furnishes a reasonable basis for supporting an inference by the jury of the ultimate fact that the defendant's negligence caused the plaintiff harm." McCarthy, 567 N.W.2d at 506. Here, a jury could reasonably rely on this evidence to hold that the stump was a substantial factor in causing Brunsting's fall. Indeed, Minnesota courts have upheld jury verdicts where there was similar circumstantial evidence on causation. See, e.g., Lutz v. Lilydale Grand Central Corp., 250 N.W.2d 599, 600 (Minn. 1977) (per curiam) (affirming jury verdict in slip-and-fall case where the only evidence of causation was circumstantial evidence that there was ice in the parking lot); Majerus v. Guelsow, 113 N.W.2d 450, 454-56 (Minn. 1962) (affirming jury verdict where jury inferred from circumstantial evidence that the decedent's fall down a flight of stairs was caused by defendant's negligent maintenance of the stairs). Brunsting is not required to disprove all other possible causes of the accident. See Mitton v. Cargill Elevator Co., 144 N.W. 434, 436 (Minn. 1913). Rather, he must only furnish a reasonable basis upon which a jury could infer that Lutsen's negligence caused his harm. See id. ("Where a cause is shown that might produce a given accident, and the fact appears that an accident of that particular character did occur, it may be a warrantable inference, in absence of a showing of other causes, that the one known was the operative agency in bringing about the result.").

Lutsen places significant emphasis on statements made by Christiansen and Walch that Brunsting did not hit the stump before falling. Although neither this court nor the district court is to determine the credibility of this testimony at the summary judgment stage, see Anderson, 477 U.S. at 255, especially given the direct and circumstantial evidence to the contrary, we note that the precise issue here is not

whether Brunsting hit the stump, but whether Lutsen's failure to remove the stump was a proximate cause of Brunsting's accident. A finding that Brunsting did not hit the stump is not incompatible with a finding that Lutsen was negligent. Under Minnesota law, Brunsting must prove that Lutsen's failure to remove the stump was the proximate cause of his injuries, and "that [this] negligent conduct was a substantial factor in bringing about the injury." Lietz, 718 N.W.2d at 872. If Brunsting in fact hit the stump, and it in fact caused him to fall, then the stump would clearly be a "substantial factor" in Brunsting's injuries, as would Lutsen's failure to remove the stump. Additionally, we see no reason why the existence of the stump could not be a substantial factor in Brunsting's fall if seeing it caused him to take evasive action and lose control. See Restatement (Second) of Torts § 303 cmt. d ("A in joke throws a cannon cracker in front of an automobile which is being driven rapidly but within the speed limit. The explosion so startles B, the driver of the automobile, that he loses control of the car and swerves into a stone wall, hurting himself and the passengers. A is negligent toward B and the passengers in B's car.").

Because Brunsting provided more than a "mere scintilla" of evidence on causation, see Anderson, 477 U.S. at 252, Lutsen has failed to meet its burden of showing that there is no genuine issue of material fact. Indeed, the parties' arguments before the district court and on appeal focused primarily on a question of fact, namely whether the partially exposed stump caused Brunsting's accident. Based on the evidence presented, including the statement Benson claims Christiansen made at the scene, a reasonable jury could come to more than one conclusion as to the stump's role in Brunsting's accident. As such, summary judgment is inappropriate.

III.

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion. Because

-14-

Cheri Brunsting's claim for loss of consortium is derivative of Keith Brunsting's claim, we must reverse the grant of summary judgment as to her claim as well.

SHEPHERD, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment.

I agree with the majority that Brunsting provided more than a "mere scintilla" of evidence on causation, see supra at 14 (citing Anderson, 477 U.S. at 252), such that summary judgment in favor of Lutsen was inappropriate, and I concur in the majority's remand of this case. However, I disagree with the majority's determination that the district court abused its discretion in holding that Christiansen's statement was not an excited utterance under Federal Rule of Evidence 803(2). Thus, I respectfully dissent from Part II.A of the majority's opinion.

To qualify as an excited utterance under Rule 803(2), a hearsay statement's proponent must prove: "(i) that the statement was in reaction to a truly startling event; (ii) that the statement was made under the stress of excitement caused by that event; and (iii) that the statement relates to the event." Weissenberger & Duane, supra,§ 803.8. The majority correctly notes that our review of evidentiary issues decided by the district court is limited and that we review those decisions only for an abuse of discretion, even at the summary judgment stage. See supra at 7 (citing Morgan, 380 F.3d at 467; Yates, 267 F.3d at 802). However, the majority departs from this clear standard and improperly engages in a de novo review of the district court's decision.

Under an abuse of discretion standard of review, "[w]e are not to substitute our judgment for that of the district court." United States v. Iron Shell, 633 F.2d 77, 86 (8th Cir. 1980). It has often been noted that "[a] district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." United States v. Abel, 469 U.S. 45, 54 (1984); see also Control Data Corp. v. Int'l

Bus. Machs. Corp., 421 F.2d 323, 326 (8th Cir. 1970) ("It should be remembered that a trial court has a great latitude in ruling on the admissibility of evidence."); Burger Chef Sys., Inc., v. Govro, 407 F.2d 921, 930 (8th Cir. 1969) ("The discretion of the trial court in the admission of evidence, when exercised within normal limits, should not be disturbed on appeal."). In deciding evidentiary issues, the district court "has a 'range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004) (quoting Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc., 295 F.3d 870, 873 (8th Cir. 2002)).

Contrary to the majority, I can find no mistake of law in the district court's evidentiary decision. The district court correctly noted the factors used in determining whether a statement qualifies as an excited utterance, see Brunsting, Civ. No. 07-4192, slip op. at 7 (citing Wilcox, 487 F.3d at 1170), and applied those factors, noting that "[t]he alleged statement was made four to five minutes after the accident took place, and was made in response to Benson's inquiry[,]" id. at 8, "there is no evidence that Christiansen was . . . acting as if she was in such a state as to be unable to falsify[,]" id., and "Christiansen had no connection to Brunsting which may lead to a strong emotional response to his unfortunate circumstances[,]" id. at 9.[7] While clearly there

---

[7]In his reply brief, Brunsting argued that Christiansen's "statement was made contemporaneously with the latter, truly startling event, which was her immediate presence at the chaotic scene of a dire emergency . . . ." (Appellant's Reply Br. 6.) The majority seizes on this argument and holds that the district court's failure to define the "event" as Christiansen's "witnessing a near-fatal traumatic accident from the chairlift and immediately rushing to the scene where Brunsting was unconscious, bleeding from the mouth, turning blue and believed to be near death, as others tried to stabilize him until medical assistance arrived[,]" supra at 8, constitutes an abuse of discretion. According to the majority, Christiansen's statement was actually made contemporaneously with the event, because the event lasted at least as long as it took Christiansen to make her statement. First, I believe such an open-ended definition of the "event" goes beyond what Rule 803(2) intends. The "event," for purposes of Rule 803(2), must have some ending, and the most logical place for that ending is with the

-16-

was also evidence tending to support Brunsting's argument that Christiansen's statement was an excited utterance, see supra at 8-10, the majority's mere disagreement with the way the district court weighed this evidence does not amount to an abuse of discretion. Because the district court is in the best position to rule on the admissibility of evidence, we have historically avoided engaging in a de novo review of a district court's evidentiary rulings, see Iron Shell, 633 F.2d at 86, and we should do so here.

Because the district court did not commit "a clear error of judgment in weighing the facts on the basis of the record before it," Boswell, 270 F.3d at 1204, I would uphold the court's evidentiary ruling that Christiansen's statement does not qualify as an excited utterance. Therefore, I respectfully dissent from Part II.A of the majority's opinion. Because I agree that, even without this evidence, Brunsting presented sufficient evidence to defeat summary judgment, I concur in the remainder of the majority's opinion and in the judgment.

_____

event that caused Brunsting's injury, i.e., when he struck the tree. This is supported by the content of Christiansen's statement, which relates not to Brunsting's condition, but rather to the cause of the accident itself. Second, it is unclear whether Brunsting made this argument in the trial court, as the argument was raised for the first time before us in Brunsting's reply brief. As such, we need not address it. See United States v. Barraza, 576 F.3d 798, 806 n.2 (8th Cir. 2009). Finally, even if the "event" is properly understood to last at least until Christiansen made her statement, I do not believe that the district court's contrary determination constitutes an abuse of discretion.