# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2295

_____

Georgette Sherman

*Plaintiff - Appellant*

v.

Douglas A. Collins, Secretary, United States Department of Veterans Affairs

*Defendant - Appellee*

United States of America

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 16, 2025
Filed: November 6, 2025

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

While Georgette Sherman was working at the Veteran's Administration in Kansas City, Missouri, she and her supervisor, Angela Frey, did not get along. After Sherman left its employ, she sued the KCVA under Title VII, 42 U.S.C. § 2000e–1 to –17, claiming that Frey had discriminated against her because she is black, retaliated against her for complaining of racial discrimination, created a racially hostile work environment, and constructively discharged her. The district court[1] granted summary judgment to the KCVA, and Sherman appeals. Reviewing the district court's decision de novo, *see Woods v. Collins*, 150 F.4th 967, 971 (8th Cir. 2025), we affirm.

At the time relevant to her lawsuit, Sherman was the Supervisory Medical Support Assistant in the KCVA's Office of Community Care. A few months after Sherman began working there, Frey was hired as the office's supervisor. Sherman asserts in her brief on appeal that Frey harassed her "[f]rom the very beginning." Sherman was eventually assigned, or temporarily transferred, to a job outside the Office of Community Care. Over a year after her new job had begun, she retired from the KCVA.

The essential question in this case is why Frey treated Sherman the way she allegedly did. We start with the principle that the law does not authorize courts to sit as super-personnel departments reviewing the wisdom or general fairness of an employer's actions against an employee. *See Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 939 (8th Cir. 2019); *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020). Title VII does not impose "a general civility code for the American workplace." *See Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 701 (8th Cir. 2021).

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

That means that courts are not the place to sort out office conflicts to determine who might be to blame. While courts generally stay out of workplace imbroglios, there are nevertheless situations in which employees can bring complaints about an employer's actions before a court and get relief. Under Title VII, for example, employers are prohibited from discriminating against an employee with respect to compensation and terms, conditions, or privileges of employment because of the employee's race. *See* 42 U.S.C. § 2000e–2(a)(1).

Sherman invokes Title VII by claiming that Frey discriminated against her because she is black. Since she doesn't offer direct evidence of discrimination, Sherman shoulders the initial burden to make out a prima facie case of racial discrimination, which requires her to show, among other things, a causal connection between what the law regards as an adverse employment action she suffered and her race. *See Parker v. U.S. Dep't of Agric.*, 129 F.4th 1104, 1111 (8th Cir. 2025). At this stage of the case, Sherman cannot simply rest on the allegations in her complaint, *see Lee v. Collins*, 143 F.4th 921, 924 (8th Cir. 2025); she must offer "evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

From what we can tell, Sherman bases her discrimination claims on three of Frey's actions. We will assume that they were adverse employment actions capable of supporting a discrimination claim. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). The difficulty for Sherman is that she doesn't offer evidence that her race had anything to do with them.

Sherman says the first adverse action occurred when Frey denied Sherman training opportunities relating to a new federal law that the office needed to implement. The district court rejected Sherman's contention that the denials were racially motivated because it concluded that the allegations were too "vague, conclusory, and unsupported." We agree. According to Sherman, she requested

certain training, her requests were denied (presumably by Frey), and other employees were allowed to attend. She says that Frey once rejected her request to use her own leave time to attend training in Wichita and that Frey took some nurses and medical support assistants to Florida for training but Sherman wasn't allowed to join them. With only this limited information to go on, no reasonable jury could conclude that Sherman's race had anything to do with Frey's denial of Sherman's requests for training. We do not know what these training sessions were about and whether they were designed to reach people in Sherman's position. We also do not know when the trainings were offered, whether alternatives to training existed, why certain other employees were allowed to participate, whether other black employees were allowed to attend, or whether employees of other races were prohibited from attending. In short, Sherman hasn't come forward with sufficient evidence for a reasonable jury to find a Title VII violation.

The second adverse action Sherman uses to support a discrimination claim has to do with Frey giving her a failing performance review, which she says led Frey to assign her to a menial position. The district court determined that Sherman had not been reassigned because of her performance review but because she was under investigation for misconduct. Sherman takes issue with that determination on appeal. But even if we assume that the review led to her temporary reassignment, Sherman has offered no evidence suggesting that her race played any part in her performance review or her temporary reassignment. She resorts to speculation and bald assertions of discrimination, and so a reasonable jury could not find in her favor on this record.

The third act of discrimination, Sherman says, occurred when Frey interfered with Sherman's effort to obtain a job with the VA in Florida. As the district court correctly observed, however, Sherman's suspicions stem from a conversation she had with a KCVA employee she identified merely as "Tracy" who told Sherman that some unidentified person had said that Frey had said something to the hiring authorities in Florida. The district court rejected Sherman's claim because it was "based upon a

dizzying amount of inadmissible hearsay." As we have said, "inadmissible hearsay evidence cannot be used to defeat summary judgment." *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010). On appeal Sherman says that her conversation with Tracy isn't hearsay because she didn't offer it to advance the truth of the matters asserted, *see* Fed. R. Evid. 801(c)(2), but "to establish her state of mind about retirement." We disagree. Sherman was asking the court to accept as true what others told Tracy—that Frey had interfered with Sherman's pursuit of a job. The district court correctly concluded that Sherman cannot rely on these (multiple layers of) hearsay statements to defeat summary judgment.

Sherman resists the conclusion that she hasn't offered evidence that Frey acted with discriminatory intent. She contends that Frey "talked down to her," corrected her speech, and told her that "she did not like the manner in which [Sherman] spoke." Frey also allegedly belittled Sherman and yelled at her in front of staff and cut her off during meetings. She asserts in her brief that Frey treated her "as if she were dumb—talking down to her and in front of others." But none of this raises a reasonable inference that racial considerations were at play: On its face, this kind of treatment is race-neutral. Sherman also says that Frey "treated Ms. Sherman as if she were a 'little black girl' and an angry black woman. All of these are racial stereotypes." But the record contains no specific examples of this kind of treatment or the context in which it occurred. There is no evidence to support Sherman's altogether conclusory statements. Sherman points out in addition that two other black employees said that Frey had a history of discriminating against black employees, but the reason they believed that is unclear, and Sherman offers no specifics. Though both these employees supported Sherman's belief that Frey had not treated her well, neither explained how Sherman's race had in any way motivated Frey. Finally, Sherman notes that at some unspecified point Frey told her that she "like[d] cream in my coffee, or coffee in my cream," which Sherman believes reflects discriminatory intent on Frey's part. Without any factual context, though, it is unclear what Frey

meant or that Frey was making a racially derogatory comment. In sum, the district court did not err in granting summary judgment on Sherman's discrimination claims.

Having concluded that Sherman's claims of racial discrimination fail, we turn to her assertion that Frey committed the same adverse actions that underpin those claims in retaliation for her complaining of race discrimination. "Title VII prohibits employers from, among other things, retaliating against employees for opposing unlawful employment practices, making a charge, or participating in an investigation under the statute." *Kempf v. Hennepin Cnty.*, 987 F.3d 1192, 1195 (8th Cir. 2021) (citing 42 U.S.C. § 2000e–3(a)). It is unclear what protected activity Sherman engaged in that she claims led the KCVA to retaliate against her. She mentions in her brief that at some unspecified time she intervened on behalf of the black medical support assistants because they were allegedly given more work than white employees. She provides no other information about this event. In her complaint, Sherman also notes that she filed two administrative complaints in 2020 where she alleged that she had been discriminated against, and in her brief on appeal she says that an administrative complaint she filed in 2019 was protected activity too.

Regardless of whether Sherman bases her retaliation claim on one or more of her formal administrative complaints or on her informal intervention on behalf of black medical support assistants, the claim fails for a reason much like the one that led us to reject her discrimination claim: She hasn't provided sufficient evidence "of a causal link between the protected conduct and materially adverse action." *See id.* at 1196. She merely speculates that a causal relationship exists without demonstrating why a reasonable jury could agree. *Cf. Martinez-Medina v. Rollins*, 144 F.4th 1091, 1098–99 (8th Cir. 2025). In her brief, Sherman argues in passing that the "temporal proximity" between her protected activities and Frey's adverse actions raises an inference of a retaliatory motive. But Sherman hasn't pointed to specific evidence that would allow a reasonable jury to conclude that the timing of events suggests an unlawful motive. For example, Sherman doesn't specify when she informally

interceded on behalf of black medical support assistants, so we cannot tell how close in time that event was to an allegedly retaliatory act. In addition, her temporary reassignment came about eight months after she filed her first formal administrative complaint, which is too long to create an inference of an improper motive. *See id.* at 1099. And it occurred before she filed her second and third formal administrative complaints, meaning that those complaints could not have caused the reassignment. The district court did not err in granting summary judgment on Sherman's retaliation claim.

Sherman also claims that she was subjected to a racially hostile work environment and was constructively discharged. She anchors those claims to the various events already adverted to as well as others, including alleged incidents when Frey erroneously designated Sherman as absent without leave one day (the matter was corrected), when coworkers improperly accessed Sherman's personnel file without being punished, when Frey directed other employees to draft false reports against Sherman, and when Frey had security officers escort Sherman from the office following a dispute over whether Sherman could take her laptop with her while she was reassigned. Once again, though, Sherman has offered no evidence to suggest these actions were connected to her race. What is more, to prevail on a claim that she was subjected to a racially hostile work environment, Sherman had to show that a reasonable jury could find that the work environment was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment as viewed objectively by a reasonable person." *See Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007). The conduct "must be extreme in nature and not merely rude or unpleasant"; it must be "so intimidating, offensive, or hostile that it poisoned the work environment." *See id.* The incidents here fall well short of that high threshold. *Cf. Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 352, 359 (8th Cir. 1997). And because Sherman has failed to show that events were severe enough to constitute a hostile work

environment, she necessarily has failed to show that conditions were so intolerable that she was constructively discharged. *See O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810–11 (8th Cir. 2008).

Affirmed.

_____